# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **ROBERT C. GORDON # 65920,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 3:26-CV-00046** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **CHAD YOUKER,** | ) | **MAGISTRATE JUDGE** |
| | ) | **FRENSLEY** |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Robert C. Gordon, a pre-trial detainee in the custody of the Williamson County Jail in Franklin, Tennessee, filed a pro se complaint under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, concerning the removal of his religious materials, including his Bible. (Doc. No. 1). Plaintiff also asserts claims under Tennessee Code Annotated § 41-21-211 and the "Spending Clause, Commerce Clause, [and] Federal Torts Claims Act." (Doc. No. 6-1 at 1).

He also filed an Application for Leave to Proceed In Forma Pauperis ("IFP Application") (Doc. No. 11), Motion for Leave to Amend Complaint (Doc. No. 6), two Emergency Motions for Preliminary Injunction (Doc. Nos. 7, 13), Motion to Join Complaints (Doc. No. 9), Motion for Extension of Time to File Inmate Trust Account (Doc. No. 10), Motion for Class Action Certification and Class Definition (Doc. No. 12), Emergency Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") (Doc. No. 14), Ex Parte Motion for TRO and Preliminary Injunction (Doc. No. 15), and Emergency Motion for TRO (Doc. No. 16). The Court must begin with the filing fee.

1

# I. FILING FEE

Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Plaintiff has submitted an IFP Application, a certified Certificate of Prisoner Institutional/Trust Fund Account Activity, and a statement of his transactions over the past six months. (Doc. No. 11). From a review of these materials, the Court finds that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his IFP Application (Doc. No. 11) is **GRANTED**.

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at Williamson County Jail to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian of his inmate trust fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II. MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiff's Motion for Leave to Amend Complaint (Doc. No. 6) is **GRANTED**. The operative pleading in this case is now the Proposed Amended Complaint attached to the Motion for Leave to Amend Complaint. (*See* Doc. No. 6-1).

The Court notes that the Amended Complaint is difficult to read as the ink is very light. If possible, Plaintiff is encouraged to submit future filings using different ink. If it is not possible, the Court will endeavor to read Plaintiff's filings as filed.

## III. EMERGENCY MOTIONS (DOC. NOS. 14, 15, 16)

Plaintiff has filed five motions, which he deems "emergency" motions, seeking either a PI, TRO, or both. (Doc. Nos. 7, 13, 14, 15, 16). The two most recently filed motions (Doc. Nos. 15,

3

16) are related and seek relief for conduct that is not mentioned in the three earlier-filed motions (Doc. Nos. 7, 13).

A TRO movant must comply with specific procedural requirements. First, "any request for a TRO" must be made by written motion "separate from the complaint." M.D. Tenn. L.R. 65.01(a). Second, because the movant bears the burden of justifying preliminary injunctive relief on the merits, *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law. M.D. Tenn. L.R. 65.01(b). Third, the motion for a TRO must be supported, at a minimum, by "an affidavit or a verified complaint" and a proposed order. Fed. R. Civ. P. 65(b)(1)(A); M.D. Tenn. L.R. 65.01(b). Finally, the moving party must certify in writing "any efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B); *see also* M.D. Tenn. L.R. 65.01(c) (requiring "strict compliance" with this notice provision by pro se moving parties).

Here, Plaintiff's motions seeking a TRO (Doc. Nos. 14, 15, 16) are not procedurally compliant. They do not include a proposed order as required by Local Rule 65.01(b). For that reason alone, the Court cannot consider them on their merits, and they will be denied without prejudice to refile, if appropriate.

As for Plaintiff's two most recently filed motions (Doc. Nos. 15, 16), there is another reason why the Court cannot consider them on the merits. Those motions seek emergency relief based on claims that are not included in the Amended Complaint. The Amended Complaint alleges claims under 42 U.S.C. § 1983 and RLUIPA, *inter alia*, concerning the removal of Plaintiff's religious materials, including his Bible, and a recently-instituted prohibition on minister visits. Plaintiff's two most recently filed emergency motions seek relief based on allegations that Plaintiff is the victim of sexual abuse by Deputy Aper (who is not a named Defendant in the Amended

4

Complaint) and has been placed in isolation as retaliation for filing grievances, Freedom of Information Act requests, and lawsuits concerning the alleged sexual abuse. The motions also seek relief based on allegations that Chad Youker is stealing, "opening, reading, sharing or publishing" Plaintiff's legal mail. (Doc. No. 15 at 1; Doc. No. 16 at 1).

TROs and PIs are extraordinary remedies intended to protect the rights asserted in a lawsuit. A court's ability to grant such relief is tied directly to the legal claims currently before it. For example, one of the factors for granting a TRO or preliminary injunction is whether the plaintiff is likely to success on the merits of his claim. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 403 (6th Cir. 2022). A court cannot evaluate the merits of a claim that has not been formally pleaded. Further, an injunction is a remedy, not a standalone claim. It must be attached to a valid legal theory (such as a Section 1983 claim) already presented in the litigation.

Because Plaintiff's Ex Parte Motion for TRO and PI (Doc. No. 15) and Emergency Motion for TRO (Doc. No. 16) seek relief based on claims that have not been raised in the litigation by way of a complaint, those motions cannot be considered at this time. They will be denied without prejudice.

That leaves Plaintiff's two "Emergency Motions for Preliminary Injunction." (Doc. Nos. 7, 13). The first motion (Doc. No. 7) requests "a mandatory preliminary injunction . . . to secure access to physical Bibles and AA books." (*Id*. at 1). The second motion (Doc. No. 13) requests a "mandatory preliminary injunction for Christian minister visits to begin again under former policy." (*Id*. at 16). These motions seek relief based on Section 1983 and RLUIPA claims asserted in the Amended Complaint. The Court will move to the required screening of the Amended

Complaint under the Prison Litigation Reform Act prior to considering the two pending PI motions.

## V. PRISON LITIGATION REFORM ACT SCREENING

The Amended Complaint (Doc. No. 6-1) is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520121 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

The Amended Complaint alleges claims under 42 U.S.C. § 1983 and RLUIPA concerning the removal of Plaintiff's religious materials, including his Bible, and a recently-instituted prohibition on minister visits.

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983. Plaintiff's Section 1983 claims are premised on the violation of his First Amendment rights.

"The Free Exercise Clause of the First Amendment . . . provides that 'Congress shall make no law . . . prohibiting the free exercise [of religion].'" *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) (quoting U.S. Const. amend. I). "In any free exercise claim, the first question is whether 'the belief or practice asserted is religious in the [plaintiff's] own scheme of things' and is 'sincerely held.'" *Id*. (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)). Where a plaintiff makes this threshold showing, the Court must consider whether a regulation that "impinges on inmates' constitutional rights . . . is reasonably related to legitimate penological interests." *Id*. (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). If not, "the inquiry ends, and the prisoner prevails." *Cavin v. Mich. Dep't of Corr*., 927 F.3d 455, 461 (6th Cir. 2019) (citations omitted). If so, then the Court balances "(1) whether the prisoner possesses alternative avenues for exercising his religion; (2) whether accommodating the prisoner would affect 'guards and other inmates' or 'the allocation of prison resources generally'; and (3) whether 'obvious, easy

7

alternatives' exist that suggest 'the regulation is not reasonable.'" *Id*. (quoting *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)).

RLUIPA provides stronger protection for the religious liberty of incarcerated individuals than the First Amendment. *Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010) (citing *Lovelace v. Lee*, 472 F.3d 174, 199-200 (4th Cir. 2006)). To state a claim under RLUIPA, a prisoner must (1) "demonstrate that he seeks to exercise religion out of a 'sincerely held religious belief'" and (2) "show that the government substantially burdened that religious exercise." *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019) (quoting *Holt v. Hobbs*, 574 U.S. 352, 361 (2015)). If the prisoner satisfies these elements, then the burden shifts to the government to show "that the burden furthers 'a compelling government interest' and 'is the least restrictive means' of doing so." *Id*. (quoting 42 U.S.C. § 2000cc-1(a)).

Here, Plaintiff alleges facts from which the Court may infer that he has a sincerely held belief that reading and studying the Bible is part of his religious practice. (*See* Doc. No. 6-1 at 2). Plaintiff alleges he was baptized, attends church services weekly and on religious holidays, and has "a deeply held religious belief to read and the Bible and religious books." (*Id*.) Plaintiff further alleges that he "is a Christian and believes in AA's concept of God as a  higher power." (Doc. No. 7 at 10).

The Amended Complaint alleges that, "[o]n or about 1/18/25", Chad Youker created and ordered implementation of policies prohibiting inmates at the Williamson County Jail from possessing physical Bibles and religious texts. [1] Some inmates were granted "privileged access" to

---

[1] Notably, Plaintiff's Emergency Motion for PI references a Court Order entered "after multiple lawsuits were filed in this Court" ordering "Defendants to return Bibles on 11/25/25." (Doc. No. 7 at 2). Plaintiff provides no citation for this assertion. The instant case was not filed until January of 2026. The Court is unaware of any Order directing the return of Bibles to inmates in the Williamson County Jail.

a kiosk or tablet containing a digital version of the Bible. (Doc. No. 6-1 at 1). However, even privileged access to digital versions of the Bible was often restricted, and inmates often had no access to a Bible at all on some days, including religious holidays.

According to Plaintiff, the minister who visits inmates at the Williamson County Jail and leads the jail's "Celebrate Recovery" program (which Plaintiff describes as a "Bible based 'AA'") recommended that Plaintiff use a "Celebrate Recovery Study Bible" donated by the minister to the jail's ministry program. (Doc. No. 7 at 2). On the recommendation of the minister, Plaintiff obtained the "Celebrate Recovery Study Bible." Deputy Terri Payne seized that Bible from Plaintiff on March 13, 2026, wrote Plaintiff up for an infraction, placed Plaintiff in the "hole" for 45 days, and threatened to pursue criminal charges against Plaintiff. (*Id*. at 3). Subsequently, Captain Youker offered inmates, including Plaintiff, a King James version of the Bible.[2] Plaintiff states that he does not "speak, read, or write 'Old English' . . . making the forced offer a non-starter. Effectively offering a Bible in another language is no real offer." (*Id*.)

A reasonable factfinder could conclude that a jail policy that prohibits inmates at the Williamson County Jail from possessing physical Bibles, as alleged in the Amended Complaint, and/or punishes inmates for reading a version of the Bible other than the version provided by the jail impinges on inmates' constitutional and RLUIPA rights. *Brown v. Page*, No. 2:20-cv-00070, 2021 WL 288754, at *3 (M.D. Tenn. Jan. 27, 2021) (finding plaintiff had stated viable First Amendment and RLUIPA claims based on restricted access to Bible). "[L]imiting an inmate's access to the religious literature that he is required to read as part of his practice constitutes a substantial burden on his religious exercise." *Yates v. Painter*, 306 F. App'x 778, 780 (3d Cir.

---

[2] It is unclear whether the King James version of the Bible was a physical Bible or a digital copy on the kiosk or an e-reader.

2009) (citing *Washington v. Klem*, 497 F.3d 272, 282-83 (3d Cir. 2007)). At least as to Plaintiff's Free Exercise claim, it may be relevant that his restricted access did not preclude him from reading the Bible at all but rather made it more difficult. However, because Defendants have not filed any responsive pleadings, the Court "do[es] not have information before [it] about all of" the factors relevant to evaluating a Free Exercise claim. *See Arauz v. Bell*, 307 F. App'x 923, 928 (6th Cir. 2009). And as to Plaintiff's RLUIPA claim, the availability of an alternative means of practicing his belief "does not play into" the analysis. *Cavin*, 927 F.3d at 461 (citing *Holt*, 574 U.S. at 361-62). The allegations presently before the Court permit Plaintiff's Section 1983 and RLUIPA claims to proceed for further development of the record.

These allegations also allow the Court to reasonably infer that the challenged Williamson County Jail policies violate Tennessee's statute requiring inmate access to a Bible during non-working hours. Tenn. Code. Ann. § 41-21-211 ("Each inmate shall be provided with a Bible, which the inmate may be permitted to peruse in the inmate's cell at such times as the inmate is not required to perform prison labor.").

Because Plaintiff alleges facts from which the Court may infer that these alleged violations were a result of official policies, his claim may proceed against Captain Youker in his official capacity, which is functionally a claim against Williamson County itself. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003). The Section 1983 and state-law claims also will proceed against Captain Youker in his individual capacity, but any individual-capacity RLUIPA claim will be dismissed. *See Haight v. Thompson*, 763 F.3d 554, 569-70 (6th Cir. 2014) (RLUIPA does not permit money damages against prison officials in their individual capacities).

Moving to Plaintiff's other claims, the Federal Tort Claims Act allows lawsuits against the United States "for injury or loss of property, or personal injury or death caused by the negligent or

wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 535 (1988). Plaintiff has not sued the United States; his claims are against a county employee. Plaintiff's claims under the Federal Torts Claim Act therefore fail to state claims upon which relief can be granted and will be dismissed.

The Amended Complaint purports to also allege claims under the "Spending Clause" and "Commerce Clause." (Doc. No. 6-1 at 1). However, it does not explain what claims Plaintiff believes he has under these clauses. To pursue a claim for a jail's refusal to provide a Bible under the Spending or Commerce Clause, an inmate would typically utilize RLUIPA, which Plaintiff here has done. To the extent the Amended Complaint asserts other claims under the Spending or Commerce Clauses against Defendant Youker, any such claims will be dismissed.

### IV. OTHER MOTIONS

Captain Youker must respond to Plaintiff's remaining two "Emergency Motions for Preliminary Injunction" (Doc. Nos. 7, 13) on or before the deadline to file a responsive pleading or a motion to dismiss. The Court will rule on the motions in due course once they are fully briefed and, if necessary, will hold a hearing.

The Motion to Join Complaints (Doc. No. 9) and Motion for Class Action Certification and Class Definition (Doc. No. 12) will be held in abeyance pending the resolution of Plaintiff's PI motions.

The Motion for Extension of Time to File Inmate Trust Account Statement (Doc. No. 10) will be denied as moot. The Court already has received the required statement.

# V. CONCLUSION

For the reasons explained above, the Court rules as follows.

Plaintiff's Motion for Leave to Amend Complaint (Doc. No. 6) is **GRANTED**. The operative pleading in this case is now the Proposed Amended Complaint attached to the Motion for Leave to Amend Complaint (*see* Doc. No. 6-1), which the Clerk **SHALL** docket as an Amended Complaint.

Plaintiff's motions seeking a TRO (Doc. Nos. 14, 15, 16) are **DENIED WITHOUT PREJUDICE**.

Having screened the Amended Complaint pursuant to the PLRA, the Court finds that it states viable claims under the First Amendment, RLUIPA, and Tennessee state law. These claims shall proceed against Captain Youker in his official and individual capacities, except the RLUIPA claim which shall proceed against Captain Youker in his official capacity only.

Plaintiff's claims under the Federal Tort Claims Act, the Spending Clause, and the Commerce Clause are **DISMISSED**.

Captain Youker **MUST** respond to Plaintiff's remaining two "Emergency Motions for Preliminary Injunction" (Doc. Nos. 7, 13) on or before the deadline to file a responsive pleading or a motion to dismiss. The Court will rule on the motions in due course once they are fully briefed and, if necessary, will hold a hearing prior to ruling.

The Motion to Join Complaints (Doc. No. 9) and Motion for Class Action Certification and Class Definition (Doc. No. 12) will be **HELD IN ABEYANCE** pending the resolution of Plaintiff's PI motions.

The Motion for Extension of Time to File Inmate Trust Account Statement (Doc. No. 10) is **DENIED AS MOOT**.

Accordingly, the Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for Defendant Chad Youker. Plaintiff **MUST** complete the service packet and return it to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packet, the Clerk is **DIRECTED** to issue summonses to the U.S. Marshals Service for service on Youker. Fed. R. Civ. P. 4(b) and 4(c)(3).

This case is hereby transferred to United States District Judge Aleta Trauger as related to cases currently pending before her.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

13